UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOSEPH HANNA,

        Plaintiff,

    v.

        Case No. 2:24-cv-4226

        JUDGE DOUGLAS R. COLE

ROEHL TRANSPORT INC,

        Defendant.

<u>OPINION AND ORDER</u>

Plaintiff Joesph Hanna sued Defendant Roehl Transport Inc. for three counts of constructive discharge: one under federal law, one under Ohio statutory law, and one under Ohio common law. Roehl moves to dismiss the common law claim. For the reasons discussed below, the Court **GRANTS** Roehl's Partial Motion to Dismiss Count III (Doc. 7), and accordingly **DISMISSES** Count III of Hanna's Complaint (Doc. 1) **WITH PREJUDICE**.

BACKGROUND[1]

From September 2022 until September 2023, Roehl, a trucking company, employed Hanna as a truck driver. (Compl., Doc. 1, #2–3). While Hanna worked at Roehl, he was also enlisted in the United States Army Reserves. (*Id.* at #3). So at times, Hanna had to miss work to attend Army Reserve training and drills. (*Id.*). One such absence took place in June 2023, when Hanna took sixteen days off for training.

---

[1] As this matter is before the Court on Roehl's partial motion to dismiss, the Court generally must accept the well-pleaded allegations in the Complaint as true. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). But the Court reminds the reader that they are just that—allegations.

(*Id.*). Upon his return to work, though, things were different: Hanna "noticed an abrupt change in [Roehl]'s treatment of him." (*Id.*).

To start, when Hanna received his next work assignment, Roehl provided Hanna a "badly damaged truck." (*Id.*). The truck was so damaged that Hanna informed Austin Kuhnke, a Roehl fleet manager, and Eric Wilson, a Roehl account director, that it was unsafe, and perhaps even illegal, to drive. (*Id.* at #4). But Hanna did not get the response he hoped. Wilson allegedly accused Hanna "of not being a team player" and threatened to treat Hanna's complaints as a resignation. (*Id.*). And that's not all. The truck Hanna picked up for his next work assignment was no different—it too was "in poor condition." (*Id.*).

Beyond the truck ordeals, Hanna claims that Roehl also started assigning him routes that caused him to violate the United States Department of Transportation's rules on the maximum number of hours a truck driver can work. (*Id.*). So Hanna reported that issue to Brent Keller, another Roehl fleet operations manager. (*Id.* at #3–4). Keller allegedly responded by telling Hanna to "man up" and to "stop lying … about not having enough time to get home without violating regulations." (*Id.* at #4 (cleaned up)). In other words, according to Hanna, Roehl did not make any modifications to provide him with safe working conditions. (*Id.*).

Displeased with the "increasing hostility and unsafe working conditions," Hanna resigned—what he calls constructive discharge—on September 20, 2023. (*Id.* at #5). He also filed charges of discrimination with the Ohio Civil Rights Commission and Equal Employment Opportunity Commission (EEOC). (*Id.*). After the EEOC sent

2

him a right-to-sue letter, Hanna filed this lawsuit. (*Id.*). He asserts three claims: (1) military status discrimination under Ohio Revised Code § 4112 (Count I); (2) violation of the Uniformed Services Employment and Reemployment Rights Act (USERRA) under 38 U.S.C. § 4311 (Count II); and (3) wrongful termination in violation of public policy under Ohio common law (Count III). (*Id.* at #5–8).

Roehl now moves to dismiss Count III of Hanna's Complaint. (Doc. 7). It argues that Hanna has not plausibly alleged his claim for wrongful termination in violation of public policy. (*Id.* at #27–31). Hanna responded, (Doc. 11), and Roehl replied, (Doc. 15). So the motion is now ripe.

## LEGAL STANDARD

Roehl moved to dismiss Count III under both Federal Rule of Civil Procedure 12(b)(6) and 12(c). The only difference between those two Rules "is the timing of the motion to dismiss." *Ruppe v. Knox Cnty. Bd. of Educ.*, 993 F. Supp. 2d 807, 809 (E.D. Tenn. 2014) (quotation omitted). A party may move to dismiss under Rule 12(b)(6) "in a pre-answer motion or in an answer." *Id.* (quotation omitted). But after filing an answer, a party should move for judgment on the pleadings under Rule 12(c). *Id.* Here, Roehl moved to dismiss, (Doc. 7), after filing an answer, (Doc. 6). The Court will therefore evaluate the motion under Rule 12(c). *Ruppe*, F. Supp. 2d at 809–10 (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 n. 1 (6th Cir.1988)).

To survive a Rule 12(c) motion, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Berry v. Experian Info. Sols., Inc.*, 115 F.4th 528, 535 (6th Cir. 2024) (quotation omitted).

3

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing plausibility, the Court "construe[s] the complaint in the light most favorable to the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quotation omitted). That is so, however, only as to well-pleaded factual allegations. The Court need not accept as true any legal conclusions alleged in a complaint; and "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quotation omitted).

## LAW AND ANALYSIS

Because Roehl directs its motion only at Hanna's claim for wrongful termination in violation of Ohio law, a bit of background on that law is in order before turning to the parties' arguments. Employment in Ohio is generally governed by the employment-at-will doctrine. *Wiles v. Medina Auto Parts*, 773 N.E.2d 526, 529 (Ohio 2002). That means an employer generally may terminate an employee for any reason at any time, and that the terminated employee will not have a cause of action against the employer for wrongful discharge. *Id.* But there are exceptions. Most relevant here, a terminated employee may bring a wrongful discharge claim when the discharge violates public policy—what Ohio courts have termed a *Greeley* claim. *Miracle v. Ohio Dep't of Veterans Servs.*, 137 N.E.3d 1110, 1113 (Ohio 2019) (citing *Greeley v. Miami Valley Maint. Contractors, Inc.*, 551 N.E.2d 981 (Ohio 1990)).

To make out a *Greeley* claim "a plaintiff must establish four elements: (1) that a clear public policy existed and was manifested either in a state or federal constitution, statute or administrative regulation, or in the common law ('the clarity element'), (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy ('the jeopardy element'), (3) that the plaintiff's dismissal was motivated by conduct related to the public policy ('the causation element'), and (4) that the employer lacked an overriding legitimate business justification for the dismissal ('the overriding-justification element'). *Id.* (citing *Collins v. Rizkana*, 652 N.E.2d 653, 657–58 (Ohio 1995)). The first two elements—clarity and jeopardy—are questions of law for a court to decide. *Collins*, 652 N.E.2d at 658. The latter two elements—causation and overriding-justification—are factual issues generally meant for a factfinder (at least assuming a genuine dispute as to the relevant facts). *Id.*

Roehl challenges Hanna's *Greeley* claim on only the first two elements: clarity and jeopardy. As to clarity, Roehl says that Hanna cannot rely on Ohio Revised Code §§ 4101.11 and 4101.12 as the basis for a policy against wrongful discharge because those statutes are too broad to satisfy the "specific polic[y]" requirement the clarity element demands. (Doc. 7, #28–29). As to jeopardy, Roehl argues that the Federal Motor Carrier Safety Administration's (FMCSA) whistleblower statute precludes Hanna's claim because it provides a specific remedy for wrongful discharge where federal truck safety laws and regulations are involved. (*Id.* at #29–31). And, according to Roehl, the existence of that alternative remedial mechanism to address Roehl's

5

alleged conduct means that Hanna's wrongful discharge does not jeopardize the policies set out in §§ 4101.11 and 4101.12. (*Id.*). Hanna, unsurprisingly, disagrees. He says that relying on Ohio Revised Code §§ 4101.11 and 4101.12 as the basis for his *Greeley* claim satisfies both the clarity and jeopardy elements under Ohio law. (Doc. 11, #40–42).

The Court elects to start its analysis with the jeopardy element. And because the Court ultimately agrees with Roehl that Hanna has not sufficiently pleaded that element, the Court need not reach the clarity element. *But see Romero v. City of Middletown*, 479 F. Supp. 3d 660, 675 (S.D. Ohio 2020) (finding that Ohio Revised Code §§ 4101.11 and 4101.12 do not "articulate any specific public policy of the type that would support a discharge in violation of public policy claim").

In analyzing the jeopardy element, the Court must "inquir[e] into the existence of any alternative means of promoting the particular public policy to be vindicated by a common-law wrongful-discharge claim." *Wiles*, 773 N.E.2d at 531. If an existing "statutory scheme contains a full array of remedies" that "adequately protect society's interests," then "it is unnecessary to recognize a common-law claim" for wrongful discharge. *Leininger v. Pioneer Nat'l Latex*, 875 N.E.2d 36, 42–43 (Ohio 2007). Said differently, "wrongful discharge in violation of state public policy claims fail where other statutes provide adequate protection and remedies." *Day v. Nat'l Elec. Contractors Ass'n*, 82 F. Supp. 3d 704, 708–09 (S.D. Ohio 2014) (quotation omitted) (collecting cases and dismissing a wrongful termination claim since the Americans with Disabilities Act provided adequate remedies for disability discrimination).

6

Hanna's public policy claim here fails for just that reason. The FMCSA adequately protects society's interests by prohibiting employers from discharging, disciplining, or discriminating against an employee for (1) "refus[ing] to operate a vehicle because the operation violates a regulation, standard, or order of the United States related to commercial motor vehicle safety, health, or security," or (2) having "a reasonable apprehension of serious injury to the employee or the public because of the vehicle's hazardous safety or security condition." 49 U.S.C. § 31105(a)(1)(B). Those prohibitions cover the conduct about which Hanna complains. He essentially says that Roehl constructively discharged him for raising concerns about two things. First, requiring him to "operate a vehicle" for hours in excess of DOT regulations, which are "regulation[s] … of the United States related to commercial motor vehicle safety." *Id*. And second for requiring him to operate vehicles that were in bad enough shape to create a "reasonable apprehension of serious injury to the employee … because of the vehicle's hazardous safety … condition." *Id*.

And not only does the FMCSA prohibit those activities, but it also provides an array of remedies for violations. An employee may file a complaint within 180 days of the alleged violation with the Secretary of Labor, *id.* § 31105(b)(1), who can, in turn, order a violating employer to "take … action to abate the violation"; "reinstate the complainant to the former position with the same pay and terms and privileges of employment"; and "pay compensatory damages, including backpay with interest" plus "litigation costs, expert witness fees, and reasonable attorney fees," *id.* § 31105(b)(3)(A). The FMCSA, in other words, "contains a comprehensive remedial

scheme designed to compensate an employee for his or her employer's violation of the Act." *Wiles*, 773 N.E.2d at 531–33 (finding the Family and Medical Leave Act's similar remedial scheme sufficiently comprehensive, and therefore refusing to recognize the common-law wrongful discharge tort). In short, because Hanna "ha[d] a remedy available to him under [the FMCSA], … he cannot have that same claim under Ohio common law." *Carrasco v. NOAMTC Inc.*, 124 F. App'x 297, 304 (6th Cir. 2004).[2]

Hanna resists that conclusion, pointing to two cases as support. Neither one saves his claim. Start with *Blackburn v. American Dental Centers*, 22 N.E.3d 1149 (Ohio Ct. App. 2014). There, the court determined that the employee-plaintiff, who reported unsafe conditions at her employer-dental practice, satisfied the jeopardy element because Ohio has a public policy against employer retaliation when employees report workplace safety concerns. *Id.* at 1152, 1158. Relying on an earlier Ohio Supreme Court plurality opinion (at least with respect to the issue here), the *Blackburn* court reiterated that an "employee who is discharged or disciplined in violation of the public policy embodied in R.C. 4113.52 [Ohio's whistleblower statute] may maintain a common-law cause of action against the employer pursuant to *Greeley*." *Id.* at 1155 (quoting *Kulch v. Structural Fibers, Inc.*, 677 N.E.2d 308 (Ohio 1997), ¶ 3 syllabus).

---

[2] That Hanna did not plead a violation of the FMCSA does not matter. A "[c]ourt may look to any relevant statute, and not just the statute [pleaded] by plaintiff, to determine if adequate statutory remedies bar a public policy claim." *Hiller v. Aver Info., Inc.*, No. 5:20-cv-2244, 2021 WL 3725657, at *5 (N.D. Ohio Aug. 23, 2021) (citing *Wiles*, 773 N.E.2d at 531); *see also Carrasco*, 124 F. App'x at 304.

The Court, however, finds that *Blackburn* offers little support for Hanna's argument here for two reasons. First, as noted, that court found the jeopardy element satisfied based on *Kulch*'s determination that Ohio's whistleblower statute (the statute that there provided the public policy) does not provide adequate remedies for an aggrieved employee. *Id.*; *see also Kulch*, 677 N.E.2d at 324. Here, by contrast, the Court finds (for the reasons explained above) that the FMCSA, which is directly implicated by the conduct here, even if not alleged as the basis for the claim, *see supra* note 2, *does* provide aggrieved employees adequate remedies. So whatever *Kulch* said (and *Blackburn* reiterated) about the impact of *Ohio's whistleblower statute* on a wrongful termination tort claim, that matters little when it comes to the impact of *the FMCSA* on a wrongful termination tort claim. Second, and relatedly, as the Ohio Supreme Court also explained, *Kulch* "is not controlling" on whether a statute's remedies are "sufficiently comprehensive" to make a *Greeley* claim unnecessary, "much less a *Greeley* claim based on a *federal* statute that was the product of a Congressional balancing of right and remedy that we ought not disturb." *Wiles*, 773 N.E.2d at 534. In other words, that Ohio's whistleblower statute does not preclude a plaintiff from pursuing a common-law wrongful discharge claim under *Greeley* says nothing about whether the FMCSA—a federal statute—precludes such a claim.

Hanna's second case, *Lightner v. CB&I Constructors, Inc.*, No. 14-cv-2087, 2016 WL 6693548 (S.D. Ohio Nov. 14, 2016), presents a more compelling argument, but it ultimately doesn't carry the day either. In determining that the employee-plaintiff there had satisfied the jeopardy element, the court rejected the defendant's argument

that OSHA provided an adequate remedy to protect the underlying public policy. *Lightner*, 2016 WL 6693548, at *9–10. Instead, it found that "Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted." *Id.* at *10 (quoting *Pytlinski v. Brocar Prods., Inc.*, 760 N.E.2d 385, 388 (Ohio 2002)).

But the Court is not persuaded that the above-quoted language from *Pytlinski* tells the whole story. To start, the *Pytlinski* court sought to answer the narrow question of whether § 4113.52's 180-day statute of limitations applied to the plaintiff's wrongful discharge tort claim. 760 N.E.2d at 387. The court ultimately answered "no." *Id.* at 388. In reaching that result, it offered the quote above because it "[found] the holding in *Kulch* controlling." *Id.* That is, in stating that "Ohio public policy favoring workplace safety is an independent basis" for a *Greeley* claim, *id.*, the *Pytlinski* court was relying on *Kulch*'s finding that a plaintiff can "maintain a *Greeley* claim … whether or not he complied with the dictates of R.C. 4113.52," *Kulch*, 677 N.E.2d at 328–29. And the *Kulch* court had reached its conclusion because (1) the federal statute to which that plaintiff pointed—OSHA—did not provide a private right of action against the employer, and (2) the state statute to which the plaintiff pointed—§ 4113.52—did not offer sufficient remedies to fully compensate the plaintiff. *Id.* at 321–22, 324. In other words, *Pytlinski* is best understood as standing for the narrow proposition that a plaintiff who asserts a *Greeley* claim based on Ohio's public policy against retaliation for complaints about workplace safety may do so despite § 4113.52 providing limited remedies for that same type of claim. Indeed, that

10

is so precisely because of how limited § 4113.52's remedies are. But, consistent with that understanding, the Court does not take *Pytlinski* to mean that a plaintiff can *always* maintain a *Greeley* claim based on workplace safety even when another statute *does* provide adequate remedies to compensate an aggrieved plaintiff for the specific type of workplace safety concern at issue. *See Wells v. Russ' Steamer Serv., LLC*, No. 3:23-cv-105, 2023 WL 5833101, at *4 (S.D. Ohio Sept. 8, 2023) (explaining that the Ohio Supreme Court has, in essence, carved out the whistleblower statute from barring a *Greeley* claim).

The Court finds further support for that view in the Ohio Supreme Court's more recent holding in *Leininger*. As earlier noted, *Leininger* made clear that a common-law wrongful termination claim is "unnecessary" when another statute's "remedies adequately protect society's interest." 875 N.E.2d at 42–43. True, *Leininger* dealt with age discrimination, not workplace safety. *Id.* at 39. And *Leininger* also didn't expressly contend with *Pytlinski*. But it nonetheless made clear that *Greeley*'s jeopardy element is not met when an available statutory scheme provides a full panoply of remedies. *Id.* at 42. Here, the FMCSA does just that. So the Court concludes that Hanna cannot sufficiently allege the jeopardy element, *Lightner* and *Pytlinski* notwithstanding.

All told, Hanna's public policy wrongful termination claim fails as a matter of law (and thus cannot be saved by amendment), so the Court dismisses that claim with prejudice. *See Quillen-Smith v. U.S. Bank, N.A.*, No. 3:20-cv-364, 2021 WL 1192683, at *4 (S.D. Ohio Mar. 30, 2021).

## CONCLUSION

For the above reasons, the Court **GRANTS** Roehl's Partial Motion to Dismiss

Count III (Doc. 7) and **DISMISSES** Count III of Hanna's Complaint (Doc. 1) **WITH**

**PREJUDICE**.

     **SO ORDERED.**

June 16, 2025
_____
**DATE**

                             _____
                             **DOUGLAS R. COLE**
                             **UNITED STATES DISTRICT JUDGE**